

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 6 2018

CLERK, U.S. DISTRICT COURT

By _____
                Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RAUL VILLEGAS GARZA, §
§
Petitioner, §
§
v. § No. 4:16-CV-478-A
§
LORIE DAVIS, Director,[1] §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 filed by petitioner Raul Villegas Garza, a state

prisoner confined in the Correctional Institutions Division of

the Texas Department of Criminal Justice (TDCJ), against Lorie

Davis, director of TDCJ, respondent. After having considered the

pleadings, state court records, and relief sought by petitioner,

the court has concluded that the petition should be denied.

### I.  Factual and Procedural History

By way of this federal habeas action, petitioner challenges

his 2014 state court conviction in Hood County, Texas, Case No.

CR12706, for tampering or fabricating evidence. (Pet. 2, doc. 1.)

Petitioner's jury trial commenced on March 31, 2014. The state

---

[1]Lorie Davis has replaced William Stephens as director of the
Correctional Institutions Division of the Texas Department of Criminal
Justice. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Davis
is automatically substituted as the party of record.

appellate court summarized the background facts of the case as follows:

> In 2004, [petitioner] was convicted on four counts of indecency with a child and sentenced to twenty years' confinement for each count, to run concurrently. During his incarceration, [petitioner] filed six applications for postconviction habeas relief. [Petitioner]'s sixth application was filed on February 12, 2013.

> When the Hood County District Attorney, Robert Christian, received a copy of the sixth application, he noted that the application contained two affidavits that had not been included in [petitioner]'s previous applications. One, entitled "Affidavit to Recant My False Testimony," was purportedly written by [petitioner]'s ex-wife, Priscilla Sides, formerly known as Priscilla Kindle. The affidavit used the spelling "Priscilla Kendal" and was signed by "Priscilla Kendall." The affidavit stated that Sides had lied on the witness stand during [petitioner]'s trial. The other affidavit was purportedly written by Dr. H. Pat Hezmall and stated that [petitioner] "has no capacity for sexual arousal."

> On March 4, 2013, Robert Young, an investigator for the district attorney of Hood County, interviewed [petitioner] in prison. Young recorded the interview with both a video camera and an audiotape recorder. He gave [petitioner] a *Miranda* warning and asked if he would be willing to answer questions. [Petitioner] agreed to talk. While Young was interviewing [petitioner], prison guards removed all of [petitioner]'s files and documents from his cell. The guards brought the documents to the interview room, and Young got [petitioner]'s permission to go through them and discuss them.

> Young interviewed [petitioner] for about an hour and a half, at which time [petitioner] asked Young to turn off the video recorder. Unaware that he was still being recorded by audiotape, [petitioner] confessed to making the false affidavits with the help of some other inmates.

> [Petitioner] took a break for dinner, and when he

2

returned, Young asked him to complete a written statement regarding his confession. He also asked [petitioner] to sign a consent form to allow him to take the documents from the prison. At the top of the statement form, [petitioner] initialed that he understood his rights. The consent form also had his rights listed at the top of the page. Young took all of [petitioner]'s documents except for a copy of a court reporter's record.

[Petitioner] was charged with aggravated perjury and tampering with or fabricating evidence. Before trial, [petitioner] filed a motion to suppress the tangible evidence removed from his prison cell and all statements he made to law enforcement officers. After a hearing, the trial court denied the motion.

Also prior to trial, [petitioner] filed a motion to disqualify or recuse Judge Ralph Walton, Jr. from presiding over the case. Judge Walton had represented [petitioner] against charges of sexual abuse of a child that were unrelated to his 2004 conviction, and [petitioner] claimed that he intended to call Judge Walton as a witness. Judge Jeff Walker, then presiding for the 8th Administrative Judicial Region, denied this motion after a hearing.

At trial, Priscilla testified that on the date the affidavit was signed, her last name was Sides, not Kindle, that she had never spelled Kindle as "Kendal" or "Kendall," and that she did not sign the affidavit purporting to be from her. The notaries whose stamps were on the questioned affidavits both testified that they did not notarize the affidavits.

A man named John Pizer testified that he had been assisting [petitioner] with his applications. He testified that he had sent Hezmall the affidavit for him to sign, but that Hezmall had never responded. Pizer stated that he eventually received the signed copy of the Hezmall affidavit and Kendall affidavit in envelopes with no return address. He did not know who mailed them to him. Pizer then filed [petitioner]'s writ for him, using the affidavits as exhibits and signing [petitioner]'s name.

A jury found [petitioner] not guilty of aggravated perjury, but guilty of tampering with or fabricating

evidence, and assessed a punishment of twenty years' confinement.

(Mem. Op. 2-4, doc. 27-3.)

The appellate court affirmed the trial court's judgment as modified, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.[2] (Id. at 20.) Petitioner also filed two relevant state habeas-corpus applications challenging his conviction. The first was dismissed by the Texas Court of Criminal Appeals for noncompliance with the court's form requirements. (08SHR,[3] Action Taken, doc. 28-21.) The second was denied by the Texas Court of Criminal Appeals without written order. This federal habeas petition followed.

## II. Issues

Petitioner's claims are multifarious and addressed as thoroughly as practical. They fall within the following general categories:

    (1)    actual innocence;
    (2)    violation of his right to due process;
    (3)    violation of his right to effective assistance of counsel;
    (4)    prosecutorial misconduct; and
    (5)    improper joinder of offenses.

(Pet. 6-7-B, doc. 1; Pet'r's Mem. 13-20, doc. 2.)

---

[2] The court modified the judgment by deleting the assessment of $10,880.27 in attorney's fees.

[3] "08SHR" refers to the state court record of petitioner's state habeas proceeding in WR-63,980-08; "09SHR" refers to the state court record of his state habeas proceeding in WR-63,980-09.

### III. Rule 5 Statement

Respondent does not move to dismiss petitioner's petition for failure to exhaust state court remedies. Nor does she believe that the petition is barred by limitations or subject to the successive-petition bar. (Resp't's Answer 7, doc. 19.) 28 U.S.C. §§ 2244(b), (d) & 2254(b)(1).

### IV. Discussion

### A. Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides

that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

## B. Actual Innocence

Under his first ground, petitioner claims that he is actually innocent of the offense. (Pet. 6, doc. 1.) A stand alone claim of "actual innocence" is itself not an independent ground for habeas-corpus relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993); *Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000). The

United States Supreme Court reaffirmed in *McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013), that it has not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence. Until that time, such a claim it not cognizable on federal habeas review. *See Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006).

## C.    Due Process

Under his second ground for relief, petitioner claims his constitutional right to due process was violated because the "language [is] in error in the jury's instruction" and because the trial court failed to enter the jury's notes into evidence and refused to answer the jury notes. (Pet. 6, doc. 1; Pet'r's Mem. 15-17, doc. 2.)

Petitioner was originally indicted in Case No. CR12502 with regard to the charges but was subsequently re-indicted in Case No. CR12706. (Clerk's R. 10, 96, 100, doc. 28-10.) In two counts, the re-indictment alleged that on or about February 13, 2013, petitioner

> did, then and there, with intent to deceive and with knowledge of the statement's meaning, make a false unsworn declaration under Chapter 132 of the Texas Civil Practices and Remedies Code, and the false statement was made during or in connection with an official proceeding, and the false statement is material, to wit: the filing of an application for a writ of habeas corpus in the 355th Judicial District Court of Hood County, Texas, assigned cause number W92232-6, returnable to the Texas Court of Criminal Appeals and related to defendant's prior conviction on June 9, 2004 in Cause Number 9232 in the 355th Judicial

7

District Court of Hood County, Texas styled the State
of Texas vs. Raul Villegas Garza and the said false
unsworn declaration was then and there material to said
writ proceeding in that false statements made in the
application for a writ of habeas corpus and false facts
contained in affidavits included in the application for
a writ of habeas corpus were offered by defendant as
new evidence in support of defendant's claim of actual
innocence and could have affected the course or outcome
of the official writ proceeding.

. . .

and . . . [petitioner] did then and there, knowing that
an official proceeding was pending or in progress,
to-wit: the filing of an application for writ of habeas
corpus in the 355th Judicial District Court of Hood
County, Texas, assigned cause number W9232-6,
returnable to the Texas Court of Criminal Appeals,
related to defendant's prior conviction on June 9,
2004, in Cause Number 9232 in the 355th Judicial
District Court of Hood County, Texas, styled The State
of Texas vs. Raul Villegas Garza, intentionally or
knowingly make, present and use documents, to-wit: the
purported affidavits of "Priscilla Kendall" and "Dr. H.
Pat Hezmall," with knowledge of their falsity and with
intent to affect the course or outcome of the official
proceeding, . . . .

(Id. at 100-01, doc. 28-10.)

Petitioner complains that the trial court erroneously

"broadened" the charges contained in the indictment, in violation

of Texas Code of Criminal Procedure articles 21.02 ("Requisites

of an indictment") and 21.03 ("What should be stated"), by

instructing the jury that it could find him guilty as a party if

it found that petitioner acted alone or with John Pizer at

petitioner's direction. (Pet'r's Mem. 15, doc. 2; Clerk's R. 211-

12, doc. 28-11.) TEX. CODE CRIM. PROC. ANN. arts. 21.02, 21.03 (West

2009). Improper jury instructions in state criminal trials do not

generally provide a basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous). An improper instruction violates due process only if the petitioner demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993). Texas law is clear that the prosecution may obtain a conviction for a substantive offense under the law of parties even if the law of parties is not pleaded in the indictment. *See* TEX. PENAL CODE ANN. §§ 7.01 (Parties to Offenses), 7.02 (Criminal Responsibility for Conduct of Another) (West 2011); *Adames v. State,* 353 S.W.3d 854, 861 (Tex. Crim. App. 2011); *Marable v. State,* 85 S.W.3d 287, 287 (Tex. Crim. App. 2002). Further, the Fifth Circuit has held that "one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense." *United States v. Robles-Pantoja,* 887 F.2d 1250, 1255 (5th Cir. 1975). Thus, petitioner's conviction under the law of parties did not violate either Texas law or the Constitution.

Petitioner also claims that in violation of his right to due process, the trial court failed to enter two jury notes into evidence and refused to answer the notes. (Pet. 6, doc. 1. Although the jury notes themselves were not entered into

9

evidence, the trial court read the notes into the record at trial. (Reporter's R., vol. 8, 190-91, doc. 27-13.) Petitioner cites to no statutory or legal precedent established by the United States Supreme Court requiring that jury notes be entered into evidence at trial. The first claim therefore has no legal basis.

Further, in the notes, the jury asked:

(1) "In count one, . . . does [petitioner] have to have knowledge of the act of filing to be found guilty" and

(2) "Can you please define "to-wit."

(Id.) To the first note, the judge responded, "I cannot answer your question. Follow the law as contained in the charge and the evidence." To the second, the judge responded, "I cannot answer your question." (Id. at 191.) Petitioner was acquitted of count one; thus, he cannot establish that he was prejudiced by the trial court's failure to provide a substantive-law instruction to the first note. As to the second note, petitioner cites to no precedent established by the United States Supreme Court holding that "to-wit" must be defined to the jury nor does he demonstrate that the failure to define the term had a probable effect on the outcome of his trial.

## D.    **Effective Assistance of Counsel**

Petitioner claims that he received ineffective assistance of counsel at trial and on appeal. (Pet. 7, doc. 1; Pet'r's Mem. 17-

19, doc. 2.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such

cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. *See also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. (internal quotation marks and citations omitted)).

In this case, no express findings of fact or conclusions of law were made by the state courts regarding petitioner's ineffective-assistance claims. The state habeas judge, who also presided over petitioner's trial, merely recommended denial of petitioner's state application after finding that there were "no controverted, previously unresolved issues of fact material to the legality of the Petitioner's conviction." (09SHR 162, doc. 28-26.) The recommendation was followed by the Texas Court of Criminal Appeals, which denied relief without hearing or written order. In the absence of express findings of fact or a written opinion, this court assumes the state courts applied the *Strickland* standard and made factual findings consistent with the state courts' rejection of the claims.

Petitioner claims his trial counsel was ineffective by

12

failing to (1) subpoena key witnesses; (2) object to the erroneous jury instruction on the law of parties; (3) "add [two complaints] in the motion to disqualify or recuse" the trial judge; (4) object to the trial judge's refusal to read the charge of the court instruction to the jury; (5) object to the trial judge's failure to answer the jury notes; and (6) investigate the signature of state witnesses.[4] (Pet. 7, doc. 1; Pet'r's Mem. 17-19, doc. 2.)

Petitioner asserts that trial counsel was ineffective by failing to subpoena three investigators with the Arizona attorney general's office who interviewed John Pizer a year before trial and who could testify that Pizer forged his name without permission. (Pet'r's Mem. 17 & Ex. 5, doc. 2.) Complaints based upon uncalled witnesses are not favored in federal habeas review because "speculations as to what these witnesses would have testified is too uncertain." *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Therefore, to show the prejudice required to support an ineffective-assistance claim premised on the failure to call a witness, a petitioner must show that the witness was available and would in fact have testified at trial in a manner beneficial to the defense. *Evans,* 285 F.2d at 377. In the state habeas

---

[4]To the extent petitioner raises additional claims for the first time in his rebuttal brief, the claims are not properly before the court and are not considered. *See United States v. Cervantes,* 132 F.3d 1106, 1111 (5th Cir. 1998).

proceeding, petitioner did not submit any affidavits by the investigators themselves, or offer any evidence that they would have been willing to testify on his behalf and that their testimony would have been favorable. If the only evidence of a missing witness's testimony is from the defendant, courts view with great caution claims of ineffective assistance based on failure to call that witness. *See Sayre v. Anderson,* 238 F.3d 631, 635 (5th Cir. 2001); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Failure to produce affidavits (or similar evidentiary support) from the uncalled witnesses is fatal to petitioner's claim of ineffective assistance. *Sayre,* 238 F.3d at 636 (complaint of uncalled witnesses failed where petitioner failed to present affidavits from the missing witnesses).

Petitioner asserts that trial counsel was ineffective by failing to object to the erroneous jury instruction. (Pet'r's Mem. 18, doc. 2.) In support, he directs the court to Texas Code of Criminal Procedure articles 21.02 (Requisites of an indictment) and 21.03 (What should be stated) and urges that the "charge language is to state what the language [is] in the indictment." (Pet'r's Rebuttal 4, doc. 22.) This claim is vague and conclusory. The court is left only to surmise that petitioner is complaining about the instruction on the Texas law of parties. However, as noted above, as a matter of state law, a trial court may charge the jury on the law of parties even if there is no

such allegation in the indictment. Because it was unnecessary under Texas law for the indictment to include such language or provide notice to a defendant, counsel was not ineffective for failing to raise a meritless objection to the indictment and/or the jury instruction. *See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997).

Petitioner asserts that trial counsel was ineffective by failing to raise additional complaints in his motion to disqualify or recuse the trial judge. (Pet'r's Mem. 18, doc. 2.) This claim is inadequately briefed. The record reflects that trial counsel filed a motion to disqualify or recuse judge Ralph H. Walton Jr. on two grounds: (1) while in private practice the judge previously represented petitioner in an unrelated criminal case and (2) petitioner intended to call the judge as a witness in the underlying criminal case. (Clerk's R. 59, doc. 28-10.) On appeal, appellate counsel raised additional claims, including claims that judge Walton was statutorily disqualified under Texas Code of Criminal Procedure article 30.01 and Texas Rules of Civil Procedure 18a(j)(1)(A) and otherwise disqualified because he was the victim of the charged offense. (Mem. Op. 13-18, doc. 27-3.) Finally, the record reflects that petitioner filed a complaint with the State Commission on Judicial Conduct, but a copy of the complaint is not found in the record. The court can only surmise that petitioner's claim is that trial counsel should have raised

15

the additional grounds raised in appellant's brief on appeal. Those claims, however, were rejected by the appellate court. Counsel is not ineffective by failing to make frivolous arguments. *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002).

Petitioner asserts that trial counsel was ineffective by failing to object to the trial court's refusal to read the charge of the court to the jury as required by Texas Code of Criminal Procedure article 36.14. (Pet'r's Mem. 5, doc. 2.) TEX. CODE CRIM. PROC. art. 36.14 (West 2007). Assuming, without deciding, that the trial court erred by not reading the charge aloud in open court, petitioner has not demonstrated actual prejudice or harm. *See Brecht,* 507 U.S. at 637. *See also Casanova v. State,* 383 S.W.3d 530, 540-44 (Tex. Crim. App. 2012) (providing defendant must show egregious harm as a result of trial court's failure to read charge aloud to the jury). Defense counsel had the opportunity to object to the charge during the charge conference, and petitioner has identified no meritorious objection to the charge. Further, each member of the jury received a written copy of the charge for their use during deliberations. (Reporter's R., vol. 8, 172-73, 190, doc. 27-13.) It does not appear from the record that the jury ignored this instruction or received improper instructions with respect to the law applicable to petitioner's case.

16

Petitioner asserts that trial counsel was ineffective by failing to object to the trial court's failure to answer the jury notes. (Pet. 7, doc. 1.) This claim is refuted by the record. As previously discussed, after receiving the two notes, the trial court did, in fact, provide a response, *albeit* a non-substantive one. Nevertheless, the court's answers were neutral, and petitioner fails to demonstrate that counsel had a valid objection to raise. It follows that petitioner fails to establish deficient performance or actual prejudice in connection with the trial court's responses to the jury notes.

Finally, petitioner asserts that trial counsel was ineffective by failing to investigate the signatures of state witnesses. (Pet'r's Mem. 19, doc. 2.) Specifically, he claims that he did not sign the consent to search form allowing Young to search and confiscate the documents in his prison cell and that, based on newly discovered evidence, his ex-wife "Priscilla signed the forged [recantation] affidavit, and [it is] highly probable Pizer signed Dr. Hezmall's forge[d] affidavit." (Id. & Ex. 10, 12 & 13.) Petitioner's first claim is refuted by the record, which reflects that counsel did request that petitioner's handwriting be analyzed and the expert testified at both the suppression hearing and at trial that, in her opinion, petitioner did not sign the consent to search form. (Reporter's R., vol. 2, 6, doc. 27-2; vol. 4, 66, doc. 27-9; vol. 7, 166-67, 180, doc. 27-12.)

The expert also testified at trial that, in her opinion, petitioner did not sign the forged affidavits. (Id., vol. 7, 174. 179, doc. 27-12.)

Petitioner's latter two claims were not raised in state court; thus, the claims raised for the first time in this federal petition are unexhausted for purposes of § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, he cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c) (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000); *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by petitioner, the claims are unexhausted and procedurally barred from this court's review. *See Dretke v. Haley,* 541 U.S. 386, 388 (2004).

In summary, deferring to the state courts' implied factual findings, and having independently reviewed petitioner's claims, the state courts' application of *Strickland* was not unreasonable. Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous

18

objections or arguments, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or objections); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain"). Even if petitioner could demonstrate defective assistance based on one or more of his claims, in view of the overwhelming evidence of his guilt, he cannot make a showing of *Strickland* prejudice. *Strickland,* 466 U.S. at 694-96.

Petitioner also asserts that his appellate counsel was ineffective by failing to raise the issue of jury-charge error on appeal. (Pet. 7, doc. 1.) This claim is vague and inadequately

briefed. Again, the court is left to surmise that petitioner is complaining about the inclusion in the charge of the law-of-parties instruction. However, based upon the discussion above, this claim fails. Appellate counsel is not required to raise frivolous issues on appeal. *See United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995). Petitioner has not demonstrated the claim is meritorious as a matter of state law; thus, he cannot demonstrate a reasonable probability that, but for counsel's failure to the raise the issue, he would have prevailed on his appeal.

**E. Prosecutorial Misconduct**

Under his fifth ground, petitioner claims the state engaged in prosecutorial misconduct, in violation of his rights under the Fourth Amendment and his right to a fair trial and due process, because investigator Young:

(1)  had no "search or seizure warrant to remove [his] personal and legal files" from TDCJ;

(2)  "coerced [petitioner] to give a false confession" by telling petitioner that he could keep his five volumes of trial transcripts;

(3)  "perjured himself on the witness stand" by testifying that he saw petitioner sign the consent to search form;

(4)  "highly probably forged [petitioner]'s name on the consent to search form";

(5)  did not have petitioner "initial the seven Mirandas";

(6)  "failed to produce [the] consent to search form

before [the] search";

(7) "failed to follow up with clear facts that the Arizona Attorney General investigators" came up with;

(8) "intentionally overlooked clear facts that [petitioner] did not mail[]" the state habeas application in question to the Hood County court; and

(9) "failed to investigate state witness Priscilla's signature on forge[d] affidavit.

(Pet. 7A, doc. 1; Pet'r's Mem. 19-20, doc. 2; 09SHR 21, doc. 28-26.)

As to petitioner's Fourth Amendment claims, the United States Supreme Count has held that a prisoner has no reasonable expectation of privacy in his prison cell or possessory interest in personal property contained in his cell entitling him to Fourth Amendment protection. *See Hudson v. Palmer,* 468 U.S. 517, 526, 530 (1984). Based on *Hudson,* the state appellate court concluded that the warrantless search of petitioner's prison cell, conducted at Young's request, and seizure of the tangible evidence was permissible. (Mem. Op. 5-6, doc. 27-3.) Further, presumably, the state courts concluded that prior *Miranda* warnings were not required under the facts of petitioner's case and that it was not required that petitioner initial each of the seven warnings on the consent form. *Stone v. Powell,* 428 U.S. 464, 494 (1976), bars relitigation of petitioner's Fourth Amendment challenges on federal habeas review. Furthermore, the

state courts' adjudication of the first claim comports with *Hudson*. Second, the state courts' determination of the second issue comports with Fifth Circuit precedent. *See, e.g., United States v. Stevens,* 487 F.3d 232, 242 (5th Cir. 2007); *United States v. Perez,* 100 F.2d 952, 1996 WL 625320, at *1 (5th Cir. 1996); *United States v. Garcia,* 496 F.2d 670, 675 (5th Cir. 1974) (holding that *Miranda* warnings are not required to be administered to a suspect in custody in order to validate a consensual search), *cert. denied,* 420 U.S. 960 (1975). And, the court finds no legal support established by the United States Supreme Court for petitioner's claims that Young was required to initial each of the seven warnings on the form.

As to petitioner's due-process claims, the United States Supreme Court has recognized that prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *United States v. Bagley,* 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs,* 427 U.S. 97, 108 (1976)).

Petitioner asserts that Young turned off the recording devices and coerced his confession by telling him that he could keep five volumes of court transcripts. The trial court conducted

22

a suppression hearing before trial and entered express factual findings that petitioner's confession was voluntary and admissible. (Clerk's R. 203-06, doc. 28-11.) At trial, petitioner testified that his confession was coerced, and the jury was instructed to disregard the confession if it found it was not freely and voluntarily made by petitioner without compulsion or persuasion. (Id. at 211.) The state appellate court, in turn, after reviewing the audiotaped interview, found no promise or coercion by Young prior to the confession. (Mem. Op. 7, doc. 27-3.) Absent clear and convincing evidence in rebuttal, this court must defer to the state court's and the jury's factual findings, including their credibility determinations. Applying the appropriate deference, no basis exists for concluding that Young coerced petitioner's confession in violation of his right to due process.

Petitioner asserts that Young violated his right to due process by perjuring himself on the witness stand and forging petitioner's signature on the consent to search form. At trial, Young testified that he witnessed petitioner sign the consent form. On the other hand, petitioner testified that he did not sign the consent form, and the handwriting expert opined that petitioner did not sign the document. (Reporter's R., vol. 7, 180, 230, doc. 27-12.) Conflicting or contradictory testimony from witnesses does not, standing alone, establish perjury. *See*

*Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990) (providing contradictory trial testimony merely establishes a credibility question for the jury). The resolution of and weight to be given conflicting or contradictory evidence is within the sole province of the trier of fact. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The jurors were entitled to believe Young's testimony and disbelieve petitioner's testimony. This court cannot substitute its independent judgment for that of the jury. *See Weeks v. Scott,* 55 F.3d 1059, 1062 (5th Cir. 1995). Nor does the expert's opinion that petitioner did not sign the document or her opinion, after the fact, that Young "did highly probably author" petitioner's name on the form clearly refute Young's testimony that petitioner signed the document.

Petitioner asserts that Young violated his right to due process because he "failed to follow up with clear facts that the Arizona Attorney General investigators" discovered. (Pet. 7A, doc. 1; 09SHR 22, doc. 28-26.) Petitioner's mere assertion, without more, does not state a claim for relief. In the state habeas proceeding, petitioner alleged that Young "intentionally failed to follow-up with clear evidence of facts that the Arizona Attorney General investigators came up with the person (Pizer) who made the two forged affidavits, downloaded the 11.07 application and forged [petitioner]'s name, and mailed it to the" trial court. (09SHR 22, doc. 28-26.) Under *Brady v. Maryland,* 373

U.S. 83 (1963), the state has a duty to produce exculpatory information in a criminal case, which encompasses the duty to investigate "any favorable evidence known to others acting on the government's behalf in the case." *Kyles v. Whitley,* 514 U.S. 419, 437 (1995). *Brady* does not however "place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Marrero,* 904 F.2d 251, 261 (5th Cir. 1990).

The record reflects that three Phoenix detectives, at the behest of the Texas Attorney General's office, interviewed John Pizer at his home, that the interview was recorded, and that the contents of Pizer's file pertaining to petitioner's state habeas application were copied onto "cd/disks" and sent to Young. (Pet'r's Mem. Ex. 5, doc. 2.) In several instances during the suppression hearing, Young could not recall the specifics of that interview, including whether Pizer admitted to signing the application during the interview and to mailing it to the Hood County court. (Reporter's R., vol. 4, 39-41, doc. 27-9.) However, it is clear from the record that Young received and reviewed the investigation report and listened to at least some of Pizer's recorded interview. Petitioner fails to establish that Young had a duty to investigate further. (Resp't's Answer 41, doc. 19.) The documents petitioner asserts would prove he did not mail the application himself, *i.e.,* prison mail logs and the envelop used

to mail the aplication, were just as accessible to petitioner. (Pet. 7A, doc. 1; Pet'r's Mem. Exs. 5 & 11, doc. 2.) The prosecution was under no duty to furnish information that was readily accessible to the defense. *See Thompson v. Cain,* 161 F.3d 802, (5th Cir. 1998).

Finally, petitioner asserts that Young violated his right to due process by failing to investigate Priscilla's signature on her forged affidavit. (Pet. 7A, doc. 1.) Young contacted Priscilla, showed her the affidavit, and she denied signing the affidavit. Petitioner fails to establish that Young was required to investigate further so as to disprove her contention. As noted, the prosecution is not required "to conduct a defendant's investigation or "assist in the presentation of the defense's case." *Marrero,* 904 F.2d at 261.

Petitioner also asserts that the special prosecutor violated his right to due process by—

    (1)  adding "other to the crime to obtain a conviction, when there no charge of other helping the petitioner in the language in the indictment";

    (2)  changing "the burden of prove from the state to the [petitioner]";

    (3)  violating "the court instruction not to go into case 9232"; and

    (4)  lying in her closing argument about petitioner "having a 'normal sexual function.'"

(Pet'r's Mem. 20, doc. 2.)

The first two claims are clearly without merit. As noted in

subsection C, under state law, if the evidence supports a charge
on the law of parties, the trial court may charge on the law of
parties even though there is no such allegation in the indictment
without violating constitutional due process. *See* TEX. PENAL CODE
ANN. §§ 7.01, 7.02; *Adames v. State,* 353 S.W.2d 854, 861 (Tex.
Crim. App. 2011); *Marable v. State,* 85 S.W.3d 287, 288 (Tex.
Crim. App. 2002). *See also Ammons v. State,* 782 S.W.2d 539, 541
(Tex. App–Houston [14th Dist.] 1989, not pet.) (holding that
application of the law of parties does not create an offense
separate from the one in the indictment). Further, the jury
charge contained an abstract instruction on the law of parties
and applied the law of parties to the facts of the case.
Therefore, the burden of proof was not shifted to petitioner and
there was sufficient evidence to support his conviction as a
party. *See Jones v. State,* 815 S.W.2d 667, 669 (Tex. Crim. App.
1991).

Petitioner asserts that the prosecutor violated his right to
due process by mentioning his criminal case in trial cause No.
9232 for indecency with a child against the trial court's
instructions and lying in her closing argument that petitioner
had a "normal sexual function." (Pet. 78A–7B, doc. 1.) Although
the state filed a motion in limine requesting, among other
things, that presentation of any evidence related to petitioner's
prior case be prohibited, petitioner fails to direct the court to

any order granting the motion or court instruction prohibiting mention of the case. (Clerk's R. 152-55, doc. 28-11.) Additionally, in petitioner's confession to Young he persisted in his innocence of the indecency charges and indicated that he only falsified the affidavits in the underlying case in an effort to obtain a hearing in the prior case. Further, at trial, petitioner testified that he was innocent of the indecency charge; that he wanted a new trial; and that his medical records would prove his innocence and that he had no sex drive. (Reporter's R., vol. 7, 113-15, doc. 27-12.). The defense also introduced the medical records into evidence, which included the record indicating petitioner "has had good sexual function since he has gotten married[.]" (Reporter's R., vol. 9, State's Ex. 8B, doc. 27-20 at 4). Consequently, matters related to the indecency case were already before the jury.

The latter claim involves the following closing argument:

> We are looking for the truth. We were looking for the truth. When this case came to us in that first case, why do you think we subpoenaed those medical records? Do you think Ms. Kaspar wants any part of a wrongful conviction? We do not. I guarantee you.

> And what do those medical records show? He's been lying all along. He said he was -- he's had normal sexual function. He's been lying since writ one.

(Reporter's R., vol. 8, 188, doc. 27-13.)

The four areas of proper jury argument under state law are summation of the evidence; reasonable inference from the

evidence; answer to opposing counsel's argument; and pleas for law enforcement. *See Buxton v. Collins,* 925 F.2d 816, 825 (5th Cir. 1991). Petitioner's credibility was at issue; thus the complained-of argument amounts to a reasonable deduction from the evidence relating to his credibility and a summation of the evidence. Even if the argument was improper, improper jury argument by the prosecution does not present a claim of constitutional magnitude unless such argument is so prejudicial that the petitioner's trial was rendered fundamentally unfair. Such unfairness exists only if the misconduct was persistent and pronounced or the evidence of guilt was so insubstantial that conviction would not have occurred but for the improper remarks. *See Harris v. Cockrell,* 313 F.3d 238, 245 (5th Cir. 2002). The mention of petitioner's prior case was neither repeated nor pronounced, and in light of the considerable evidence of petitioner's guilt, there is no reasonable probability that, absent the remarks, the result would have been different.

**F.    Joinder of Offenses**

Lastly, petitioner claims his right to due process was violated by the state's joinder of offenses in the same indictment. (Pet. 7B, doc. 1.) In his state habeas application, petitioner provided the following facts in support of this claim:

> Count two states, "The defendant knowing that an official proceeding was pending or in progress filed of an application writ 11.07 to the 355th District Court of Hood County, Texas which included two forged

> affidavits. Count one has the same crime. Jury found
> [petitioner] not guilty of aggravated perjury.

(09SHR 13, doc. 28-26.) As a matter of state law, "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. *See* TEX. PENAL CODE ANN. § 3.02(a) (West 2011). Deferring to the state courts' implied finding that the offenses were properly joined, petitioner fails to show that the state courts' rejection of the claim is contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right or that the court's procedural rulings are debatable or wrong.

SIGNED March 6, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE